Okorie Okorocha, Esq., SBN 226658
Okorocha Law Firm, P.C.
117 E Colorado Blvd., Ste 465
Pasadena, CA 91105
(310) 497-0321
OO@OOESQ.com
Attorney for Plaintiff Linda C. Love

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT-WESTERN DIVISION

| | |
|---|---|
| LINDA C. LOVE, an individual,<br><br>*Plaintiff,*<br><br>vs.<br><br>AFFINIA DEFAULT SERVICES, L.L.C.; SPECIALIZED LOAN SERVICES, L.L.C.; U.S. BANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT AS TRUSTEE OF FIRSTKEY MASTER FUNDING 2021-A TRUST; and DOES 1-10 INCLUSIVE,<br><br>*Defendants,* | Case No.: 5:23-cv-01804-FLA (SHKx)<br><br>PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>1.   VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICE ACT, CIV.CODE § 1788.30;<br>2.   NEGLIGENCE PER SE;<br>3.   CANCELLATION OF WRITTEN INSTRUMENTS, CIV.CODE § 3412;<br>4.   UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.; |

COMES NOW plaintiff Linda C. Love, ("Plaintiff"), by and through her counsel, allege as follows:

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 1-

# PARTIES

1. PLAINTIFF is, and at all relevant times mentioned herein was a resident of Los Angeles County, California, and is the rightful and lawful owner of real property commonly known as 19327 Broadacres Ave., Carson, CA 90746, ("Subject Property"). The Subject Property was used as rental property from 2017 forward, but has due to financial problems by Plaintiff put up for sale.

2. Defendant Affinia Default Services, L.L.C., ("ADS Defendant") is a limited liability company with its principal place of business in Long Beach, California. ADS Defendant conducts, and at all times mentioned herein conducted, business in Los Angeles County, California and the Central District of California. Its agent for service of process is CT Corporation. ADS Defendant is the purported current trustee of the mortgage loan that is the subject of the allegations complained of herein.

3. Defendant Specialized Loan Services, L.L.C., ("SLS Defendant") is a limited liability company with its principal place of business in Greenwood Village, Colorado. SLS Defendant conducts, and at all times mentioned hereon conducted, business in Los Angeles County, California. Its agent for service of process is United Agent Group, Inc. SLS Defendant is the purported current servicer of the mortgage loan that is the subject of the allegations complained of herein.

4. Defendant U.S. Bank, N.A., not in Its Individual Capacity, But as Trustee of Firstkey Master Funding 2021-A Trust, ("FMF Defendant") is a securitized trust with its principal place of business in New York, New York. FMF Defendant conducts, and at all times mentioned herein conducted, business in Los Angeles County, California. Its agent for service of process is U.S. Bank, N.A. FMF Defendant is the purported current beneficiary of the mortgage loan that is the subject of the allegations complained of herein.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 2 -

5. PLAINTIFF is ignorant of the true names and capacities of Defendants DOES 1-10, inclusive, and therefore sues them by fictitious names. PLAINTIFF will amend this complaint to allege DOES' true names and capacities when they are ascertained.

6. PLAINTIFF alleges that DOES 1-10 claim some right, title, estate, lien or interest in the Subject Property that is adverse to PLAINTIFF's own title. Each of these claims constitutes a cloud on PLAINTIFF's title to the Subject Property from which they seek relief.

7. PLAINTIFF alleges that DOES 1-10 are contractually, strictly, negligently, intentionally or vicariously liable and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this complaint, and that DOES 1-10 are indebted to PLAINTIFF as hereinafter alleged.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises under *Cal. Const. Art. VI §10* and *Code Civ.Proc.* §410.10 et seq., and Title 28 U.S.C. § 1332, because Defendants engaged in business in the State of California and the acts of wrongdoing alleged in this complaint occurred in California. Defendants have more than "sufficient minimum contacts" within the State of California such that this Court's exercise of personal jurisdiction over Defendants herein "does not offend the traditional notions of fair play and substantial justice." Defendants herein purposefully directed his/her activities to the State of California and consummated a transaction with a resident of the State of California, such as Plaintiff herein. As a result, caused an event or events to occur in California, and more particularly in Los Angeles County, California, out of which this action arises and which forms the basis of this action.

9. Venue is proper in this Court pursuant to Code Civ.Proc. § 392(a) because Defendants' liability to Plaintiff arose within the jurisdictional region of this Court. This Court has jurisdiction over the parties. Plaintiff is a resident of Carson, California. All Defendants regularly engage in business within Los Angeles County, California, and the real property is located in Los Angeles County, California.

10. PLAINTIFF is suing for damages that are related to violation various California statutes wherein the amount of controversy is approximately $75,000.00 and/or according to proof.

## II.

## RELEVANT FACTS

11. This dispute arises out of a residential loan transaction and Defendant's bad faith conduct related thereto. Plaintiff reasonably believed the loan was forgiven in total more than 13 years ago, as no communication or collection efforts have been made on the loan by the then loan servicing agent. Defendants as such are in violation of Cal.Civ.Code §1788 et.al., as well as Title 15 U.S.C. §1638 et. seq. as creditors.

12. Plaintiff reasonably believed her 2006 junior Lien [Home Equity Line of Credit Deed of Trust Secondary Lien] for $56,000 with BrooksAmerica Mortgage Company, [ordered by regulatory agency to cease operations in 2008], was a discharged loan as the lien to the loan was extinguished by loan servicer Green Tree Loan. Defendants here have no real property interest for which Plaintiff will establish by this filing, and they have effectively have taken a "Zombie" loan extinguished and discharged and without legal authority attempted to revive it from the dead.

13. Plaintiff is informed and believes, and thereon alleges that she stopped

hearing about this loan once his bankruptcy was closed. The then loan servicer Green Tree Loan (Ordered by regulators in 2014 cease operations was acquired Ditech Loan in 3. 2015) was listed in the Schedule C (See Judicial Notice Bates Stamp page 73 filed October 4, 2012 list of creditors), but declined to become a creditor in the 2010 bankruptcy proceedings. Shortly there-after, Green Tree Loan notified Plaintiff that the loan was forgiven.

14.     Plaintiff is informed and believes, and thereon alleges that on July 15, 2017, SLS Defendant sent a letter to Plaintiff Carson property [that plaintiff no longer lived at], that they were now the loan servicing agents of her loan. Plaintiff believed and relied on that remaining balance on the loan had been extinguished and discharged by Green Tree Loan. Further, Plaintiff's 2016 credit check also showed the loan as being charged off.

15.     Plaintiff is informed and believes, and thereon alleges that she in turn demanded from SLS Defendant an explanation in writing, including all loan statements mailed out, an accounting of loan payments, as well as chain of title for transfer of her loan serving. Plaintiff has received none to date. Now, a 3rd submitted creditor, ADS Defendant suddenly appeared on June 20, 2023 to record a "Notice of Default and Election to Sell Under Deed of Trust" on her property of 39 years. Unbeknownst to Plaintiff, her original lien loan of $56,000 was being foreclosed on by trustee ADS Defendant, who was now some 13 years latter was demanding $112,500.21 from Plaintiff to bring the loan current.

16.     Plaintiff is informed and believes, and thereon alleges that on May 5, 2023, ADS Defendant recorded a Substitution of Deed of Trust at the direction of a previously unknown beneficiary filed by Defendant Firstkey Master Funding from Mortgage Electronic Registration System. This of which Plaintiff had no initial knowledge of.

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 5-

17.	Plaintiff is informed and believes, and thereon alleges that on December 11, 2006 Plaintiff obtained a primary loan 1st Deed of Trust with Brooks America Mortgage Corporation for $448,000.00, recorded in the Los Angeles County Recorder's Office as instrument no 20052833009. The trustee was LSI, a fidelity National Financial Company. Aurora Loans was the loan servicer. On August 16, 2010, this loan received an order granting a Motion for Relief from the Automatic Stay in Chapter 7 Bankruptcy filed on April 19, 2010. This loan is currently serviced by Nationstar Mortgage dba Mr. Cooper as the creditor listed in the discharge order for Bankruptcy dated October 7, 2010.

18.	Plaintiff is informed and believes, and thereon alleges that on or about December 11, 2006, she obtained a mortgage loan on the Subject Property from BrooksAmerica Mortgage Corporation as a second Deed of Trust in the amount of $56,000.00. The maturity due date is on December 11, 2021. The Trustee is LSI. This Deed of Trust was recorded in the Los Angeles County, California Recorder's Office as Instrument No. 06 2833010. (Exhibit "1", Deed of Trust) Brooks America was dissolved under court order and loan was transferred to Green Tree Loan. No loan interest rate was specified by Brooks America Mortgage Corporation in the executed a Deed of Trust. Green Loan elected not to be a creditor as evidenced in part by it being sent by Aurora Loan, a copy of the order evidenced by proof of service granting relief from discharge. Once again Green Tree was the loan servicer for the BrooksAmerica Mortgage Corporation lien.

19.	Plaintiff is informed and believes, and thereon alleges that on January 30, 2007, a Notice of Residential Property Report was recorded in the Los Angeles County Recorder's Office as instrument no. 20070195370, (See Exhibit "2", Notice of Residential Property Report)

20.	Plaintiff is informed and believes, and thereon alleges that on July 29, 2020, a Transfer on Death Deed was recorded in the Los Angeles County

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 6-

Recorder's Office as instrument no. 20-0851363. This deed transferred the Subject Property to Plaintiff. (Exhibit "3", Transfer on Death Deed).

21.     Plaintiff is informed and believes, and thereon alleges that on December 1, 2022, an Assignment of the Deed of Trust was recorded in the Los Angeles County Recorder's Office as instrument no. 20221125322. This assignment transferred the interest in the Deed of Trust from BrooksAmercia Mortgage to FMF Defendant. (See Exhibit "4", Assignment of Deed of Trust)

22.     Plaintiff alleges that on June 5, 2023, a Substitution of Trustee was recorded in the Los Angeles County, California Recorder's Office as Instrument No. 20230363799. This Substitution purported to replace LSI with ADS Defendant, and to assign rights to act under the Deed of Trust.  (See Exhibit 5, Substitution of Trustee)

23.     Plaintiff alleges that on June 20, 2023, a Notice of Default and Election to Sell Under a Deed of Trust was recorded in the Los Angeles County, California Recorder's Office as Instrument No. 20230400914.  (See Exhibit "4", Notice of Default and Election to Sell Under a Deed of Trust) Unbeknownst to Plaintiff's original lien loan of $56,000 was acquired by who was now some 13 years latter was demanding $112,500.21 from Plaintiff to bring the loan current. A Notice of Trustee's Sale was recorded. Plaintiff will obtain this in discovery.

24.     Plaintiff is informed and believes, and thereon alleges that in 2009, the Great Recession hit the United States and the economy toppled. As a result, Plaintiff was unable to maintain her monthly payments and defaulted on the loan. No application by Green Tree Loan. Green Tree did not file Motion for Relief of Automatic Stay. Neither did Green Tree attend any of the Creditor's meetings. Further Green Tree notified Plaintiff that it would no longer be collecting on the loan and that it was dissolved. Green Tree Loan is not listed in the list of creditors in the October 7, 2010 notice of discharge. Filed by the court.

25.     Plaintiff is informed and believes, and thereon alleges that on April 19, 2010, she filed for Voluntary Chapter 7 Bankruptcy in the United States Bankruptcy Court- Central District of California. Plaintiff's both First and Second Loans as to, BrooksAmerica Mortgage Corporation was a Scheduled Debt in the proceedings. (See United States Bankruptcy Case No. 2:10-bk-25056-AA*.). {See Judicial Notice Bates Stamp page 1 filed 4/19/2010}*

26.     Plaintiff is informed and believes, and thereon alleges that her Chapter 7 Bankruptcy was closed on October 7th, 2010. Plaintiff's Second Position Loan was an existing debt at the time of filing for Bankruptcy, Plaintiff thereby reasonably believed the obligation was extinguished.  In 2011, several months after the close of bankruptcy Green Tree Loan Server notified me the loan was charged off.  Plaintiff did not contemplate or was aware that her attorney for the Bankruptcy could have requested the court to grant a release of lien. In addition, this was the last time Plaintiff heard anything from creditors on this loan for nearly 11 years.

27.     Plaintiff is informed and believes, and thereon alleges that on October 9, 2010, the Subject Property 2nd lien as to lien holder and servicer Green Tree Loan were vacated by Green Tree Loan. This vacated for original lien amount of $56,000 when Green Tree Loan opted out from being a creditor in the Bankruptcy.

28.     Plaintiff is informed and believes, and thereon alleges that she heard nothing about this loan further, and she received no monthly loan statements from February 2007 to June 2021, when Plaintiff received a letter from SLS Defendant informing Plaintiff  that they were the now loan servicer for the loan, and that Plaintiff must start making arrangements to pay on what they said was a defaulted loan balance amount $56,000. Plaintiff had no communications from the loan servicer Green Tree Loan that they went out of business by closure of a government agency, nor its successor Ditech Finance.

29. Plaintiff is informed and believes, and thereon alleges that she demanded that SLS Defendant prove that it was the loan server, and to provide Plaintiff with a balance and statement as to remaining balance due on the loan. To date, SLS Defendant had not responded except to inform Plaintiff that she should stop making any payments to Ditech Loans. Plaintiff on her part had never made any payments to Ditech, nor was she aware at the time of the Bankruptcy filing that Ditech had acquired her loan.

30. Plaintiff is informed and believes, and thereon alleges that Defendant ADS Defendant first appeared as trustee on June 20, 2023 Notice of Default and Election to Sell Under Deed of Trust. Unbeknownst to Plaintiff's original lien loan of $56,000 was acquired by SLS defendant and now some 13 years latter was demanding $112,500.21 from Plaintiff to bring the loan current.

31. Plaintiff is informed and believes, and thereon alleges that she filed a Complaint against SLS Defendant with Federal Consumer Protection Bureau, Complaint No. LLC230707-11482203 for continued abuse by SLS Defendant.

32. Plaintiff is informed and believes, and thereon alleges that on November 21, 2023, she sent Plaintiff a letter to an address plaintiff now longer used for mailing. SLS Defendant demands money, and thus casting itself as a creditor.

33. Plaintiff is informed and believes, and thereon alleges that MERS was listed as Beneficiary on Plaintiff's 2006 lien. However, the State of California Secretary of State records, Corporation Registration No. C2416221 was suspended, and hence not doing business in the State of California from April 5, 2009 in a letter from then CA Secretary of State Debra Bowen. MERS status was renewed on July 5, 2023.

34. Plaintiff is informed and believes, and thereon alleges that despite

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 9-

Plaintiff's belief that this loan had been forgiven, she was extremely scared to lose her property and that her attempts of selling her property were being blocked by Defendant's actions. Plaintiff reached out to each of the Defendants in a letter written by attorney Shirin Buckman to try to resolve this informally. The letter pointed out to each Defendant that the debt on the 2nd Deed of Trust no longer existed, and had be dissolved by Green Tree Loan. Further, this letter attached as exhibits Plaintiff's 2016 credit report reflecting that the loan was discharged. On or about July 13, 2023, Plaintiff request separately to provide for a filing of Full Reconveyance.

35. Plaintiff is informed and believes, and thereon alleges that was not alone in this experience, as many unsuspecting borrowers now face foreclosure from a junior lien long unheard of. In April 2023, the Consumer Financial Protection Bureau ("CFPB") issued an advisory opinion scolding these servicers. See Title 12 CFR Part 1006 Fair Debt Collection Practices Act. Additionally, the California Legislature aware of the situation strengthened consumer protections under Civ.Code §1788 et. seq. Additionally CFPB issued an order dated April 7, 2020, Case No. 2020-BCFP-0002 for SLS Defendant to stop these practices.

36. Plaintiff is informed and believes, and thereon alleges that Defendants' lack of communication and collection efforts induced Plaintiff into an illegal default position. Actions of each and every Defendant both known and unknown to Plaintiff are in direct violation of usury and interest laws together with the specific terms and provisions contained within of 2006 Home Equity Line of Credit Deed of Trust Secondary Lien.

37. Pursuant to Title 11 U.S.C. § 506(a), "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such

creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . .." 11 U. S. C. § 506(a).

38. The CFPB states, "Leading up to the 2008 financial crisis, many lenders originated mortgages to consumers without considering their ability to repay the loans. These practices, which harmed millions of people, included in some cases originating products such as "piggyback" mortgages in which high-interest second mortgages were issued simultaneously with the origination of the first mortgage. One common piggyback mortgage product, known as an 80/20 loan, involved a first lien loan for 80 percent of the value of the home and a second lien loan for the remaining 20 percent of the valuation. Some consumers in these loans found themselves unable to make full payments on their first and second mortgages, and when housing prices began to decline in 2005, refinancing became more difficult.

39. When a borrower defaults on a second mortgage, the mortgage holder may be able to initiate a foreclosure even if the borrower is current on the first mortgage. However, the second mortgage holder only receives proceeds from the foreclosure sale if there are any funds left after paying off the first mortgage. As a result, many second mortgage holders of piggyback loans, recognizing that a foreclosure would not generate enough money to cover even the first mortgage, charged their defaulted loans off as uncollectible and ceased communicating with the borrowers. Some sold the loans to debt buyers, often for pennies on the dollar. Such sales often occurred unbeknownst to borrowers, who continued to receive no communications regarding the loans. Many borrowers, having not received any notices or periodic statements for years, concluded that their second mortgages had been modified along with the first mortgage, discharged in bankruptcy, or forgiven.

40. In recent years, as home prices have increased and borrowers have paid down their first mortgages, after years of silence, some borrowers are hearing from

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 11-

companies that claim to own or have the right to collect on their long-dormant second mortgages. These companies often demand the outstanding balance on the second mortgage, plus fees and interest, and threaten to foreclose if the borrower does not or cannot pay. The CFPB is concerned about homeowners who survived the 2008 financial crisis but who are now facing foreclosure threats and other collection activity because of long-dormant second mortgages. These borrowers are often told that they face a choice between entering into onerous payment plans or losing their homes and the equity they have diligently built since the financial crisis."

41. Although the advisory opinion gives guidance on the illegality of collecting on time-barred debts, it further instructs on non-judicial foreclosure sales. It states, "Although not the focus of this advisory opinion, the CFPB also notes that entities selling or collecting on these second mortgages who are mortgage servicers may also be subject to certain requirements under the Real Estate Settlement Procedures Act, the Truth in Lending Act, and the CFPB's mortgage servicing regulations. For example, unless an exemption https://files.consumerfinance.gov/f/documents/cfpb_regulation-f-time-barred-debt_advisory-opinion_2023-04.pdf applies, the CFPB's mortgage servicing regulations require servicers to provide periodic statements to consumer."

42. Plaintiff is informed and believes, and thereon alleges that her original loan with was an above-referenced loan. Over the last 13 years since the bankruptcy discharge, Plaintiffs' home rose above water and now there is sufficient equity ripe for the taking. In addition, because Plaintiff never received any communication or periodic statements for years, she was an unsuspecting borrower who reasonably believed the loan was forgiven

43. To address this exact situation, CFPB issued this advisory opinion to both reprimand these services and point to precise statutes that Plaintiff may enforce

to protect his home. Defendants, through substantive and procedural irregularities of the non-judicial foreclosure process, are undertaking a wrongful non-judicial foreclosure of the Subject Property. Because of Defendants' inexplicable delay in collecting, and entire failure to communicate the Loan's status, Plaintiff incurred an enormous debt, which includes penalties and interest on back dues that Plaintiff should never have owed but for Defendants' conduct. Furthermore, Plaintiff incurred the present costs and attorney fees to bring this action. The loan would not be in default and the property would not be in foreclosure if not for Defendants' bad faith tactics.

44. PLAINTIFF alleges that FMF Defendant failed to advise Plaintiff in writing within 30 days that her Deed of Trust was transferred or assigned to a third party, and that it is the new owner or assignee of the debt is illegal in violation of Title 15 U.S.C. § 1641(g).

## CAUSES OF ACTION

1.

## VIOLATION OF CALIFORNIA'S ROSENTHAL ACT, CAL.CIV.CODE § 1788. ET. SEQ.

(Against SLS Defendant, FMF Defendant and ADS Defendant)

45. Plaintiff incorporates by reference, as though fully set forth in the preceding paragraphs this Complaint.

46. The statute of limitations in California for a written breach of contract is 4 years pursuant to Code Civ.Proc. §337. The debt against the Deed of Trust and Promissory Note at issue are thus time-barred.

47. The debt against the Subject Property is time-barred, and Defendants here purchased the debt fully knowing this fact and still pursued that time-barred debt that as a matter of law, they could not collect even if they could persuade

PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 13-

Plaintiff that the debt was owed. See *Kasier v. Cascade Capital, LLC*, 989 F.3d 1127 (9th Cir. 2021), "a debt collector that brings a lawsuit will have violated the FDCPA 'if a court ultimately determines that the debt was time barred,' " even if the debt collector previously believed in good faith that the statute of limitations had not expired." Id. at 1135, citing to Regulation F, Title 12 CFR 1006.26(b). "A debt collector who sues or threatens to sue a consumer to collect a time-barred debt explicitly or implicitly misrepresents to the consumer that the debt is legally enforceable, and that misrepresentation is material to consumers because it may affect their conduct with regard to the collection of that debt, including whether to pay it." 86 FR 5776, 5778 (Jan. 19, 2021).

48. SLS Defendant, FMF Defendant and ADS Defendant are debt collectors as defined by Civ.Code §1788.2(f), which now includes mortgage debt.

49. The FDCPA prohibits a debt collector from making a false representation of the amount, character or status of a debt. See Title 15 U.S.C. § 1692(e)(2). Representing to Plaintiff that the debt to the Subject Property pursuant to the Deed of Trust and Promissory Note is valid and can be collected was false and misleading.

50. SLS Defendant, FMF Defendant and ADS Defendant misrepresented the amount of the
debt by including interest and fees that it is federally prohibited from collecting on the Plaintiff's loan in its reinstatement calculation, which was included in the recorded notice of default.

51. SLS Defendant, FMF Defendant and ADS Defendant have made other false statements to Plaintiff regarding the amount of the their debt.

52. The Rosenthal Fair Debt Collections Practices Act requires debt collectors to comply with the requirements of the FDCPA.

53. SLS Defendant, FMF Defendant and ADS Defendant has violated the FDCPA, and by extension, California's Rosenthal Fair Debt Collections Practices Act.

54. Plaintiff is entitled to $1,000 each for SLS Defendant, FMF Defendant and ADS Defendant's violations of the Rosenthal Act pursuant to Civ.Code § 1788.30(b).

55. Plaintiff is are entitled to for attorney's fees pursuant to Civ.Code § 1788.30(c).

## 2.
## NEGLIGENCE PER SE

(Against SLS Defendant, FMF Defendant and ADS Defendant)

56. Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

57. Plaintiff alleges that SLS Defendant, FMF Defendant and ADS Defendant breached their duty of ordinary care and good faith to Plaintiff, and their duty not to put Plaintiff in a worse position when they:

    a. Violated Civ.Code § 1788.30 and Title 15 U.S.C. § 1692(e)(2) by attempting to collect on a debt with Plaintiff related to the 2nd Deed of Trust using inaccurate information;

    b. By failing to pay off the superior lien debt on the 1st Deed of Trust in violation of Civ.Code §2904.

58. SLS Defendant, FMF Defendant and ADS Defendant owed Plaintiff a duty of care because their activities violated affirmative statutory duties extrinsic to loan modification. Specifically, SLS Defendant, FMF Defendant and ADS Defendant violated a common law duty of care or a duty of care under several statutes, the act caused harm or all harm the statute was designed to prevent; and

Plaintiff was the victim suffering harm due to the breach of the duty of care generally and as a member of the statute's protected class.

59. SLS Defendant, FMF Defendant and ADS Defendant's breaches are the *actual* and *proximate cause* of Plaintiff's damages because, but for their breaches of statutory duties, Plaintiff would not be facing foreclosure. If SLS Defendant, FMF Defendant and ADS Defendant acted reasonably and lawfully carrying out their statutory duties, Plaintiff would have avoided a large arrears and large interest, penalties and a weakened position in negotiating the foreclosure issue at hand.

60. As a consequence of SLS Defendant, FMF Defendant and ADS Defendant's practice in this regard, Plaintiff suffered damages by (1) costs and attorneys' fees spending numerous hours and resources in providing them with updated financial documents; (2) incurred additional and unnecessary late penalties on top of the default servicing which included the recording of the Notice of Sale; (3) damaged their credit reports in the process; and (4) higher arrears that is no longer affordable to Plaintiff; and faces foreclosure.

61. Plaintiff demands restitution damages in an amount to be determined at trial and to disgorge SLS Defendant, FMF Defendant and ADS Defendant's profits. Plaintiff incurred copying and faxing costs and attorney fees in the loan modification application process.

3.

CANCELLATION OF WRITTEN INSTRUMENTS, CIV.CODE § 3412

(AGAINST SLS Defendant, FMF Defendant and ADS Defendant)

62. Plaintiff realleges and incorporate by reference all proceeding paragraphs as though fully set forth herein.

63.   The time-barred debt set forth in the Deed of Trust and Promissory Note cannot be collected on, and Defendants' collection activity to foreclose on the Subject Property pursuant to the Deed of Trust and Promissory Note violates Civ.Code §1788.30 and Title 15 U.S.C. § 1692(e)(2), the opinion *in Kasier v. Cascade Capital, LLC*, 989 F.3d 1127 (9th Cir. 2021), and Civ.Code §2904.

64.   With the time-barred debt not being collectible, the Deed of Trust and Promissory Note are voidable, as are the Notice of Default and Notice of Trustee's Sale recorded against the Subject Property for collection purposes.

65.   PLAINTIFF has a reasonable belief that the Notice of Default, instrument no. 20230400914 and Notice of Trustee's Sale, instrument no. unknown, Deed of Trust, instrument no. 06 2833010, and the Promissory Note are voidable. **(Exhibits "1" and "4")**

66.   PLAINTIFF has a reasonable apprehension that if these voidable recorded written instruments are left outstanding, they will cause serious injury to PLAINTIFF of a wrongful foreclosure because of their violations of Civ.Code §1788.30 and Title 15 U.S.C. § 1692(e)(2), the opinion *in Kasier v. Cascade Capital, LLC*, 989 F.3d 1127 (9th Cir. 2021), and Civ.Code §2904.

67.   PLAINTIFF seeks to cancel the hereinabove written instruments Notice of Default, Notice of Trustee's Sale, pursuant to Civ.Code §3412 due to them being voidable, clouds on title and wrongfully recorded.

4.

<u>UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF.CODE §17200, ET SEQ.</u>

(Against SLS Defendant, FMF Defendant and ADS Defendant)

68.   Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

69. SLS Defendant is engaged in the business of lending money for real property purchases and selling mortgages/deed of trust as secured loans, and or servicing those loans.

70. FMF Defendant is engaged in the business of securitized, real estate investment trust on Wall Street, New York City, New York.

71. ADS Defendant is engaged in the business of being a trustee for real property foreclosure activities

72. Plaintiff alleges that SLS Defendant, FMF Defendant and ADS Defendant violated Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in unlawful, unfair, and fraudulent business practices as alleged above.

73. Plaintiff alleges that SLS Defendant, FMF Defendant and ADS Defendant violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL resulting in injury and economic loss to Plaintiff when it purposely violated Civ.Code § 1788.30 and Civ.Code §2904.

74. These acts and more are unlawful and unfair conduct has caused substantial harm to Plaintiff and the California citizenry at large.

75. A borrower may bring an unfair claim per the statute by alleging that a servicer's statements or conduct was misleading.

76. In the present case, the information provided to Plaintiff was certainly misleading and not consistent as to the status of the loan modification and what she was supposed to do to satisfy the lender's demands.

77. PLAINTIFF has suffered an actual, pecuniary injury of the loss of the equity in the value of the Subject Property, and the costs of seeking a remedy for SLS Defendant, FMF Defendant and ADS Defendant's wrongful actions.

78. Under the three-factor analysis test found in *Zuniga v. Bank of America, N.A.,* 2014 WL 7156403 (C.D. Cal. Dec. 9, 2014), Plaintiff has stated a viable UCL claim.

79. PLAINTIFFS demand restitution, and that SLS Defendant and FMF Defendant disgorge their illicit profits and that Plaintiff receive all monetary awards statutorily due to them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in their favor and against Defendants and each of them as follows:

1. For compensatory, special and general damages in an amount subject to proof at trial;
2. For restitution and the disgorgement of profits;
3. For an injunction cancelling the void or voidable written instruments;
4. For a $1,000 civil penalty for violations of the Rosenthal Act pursuant to Civ.Code § 1788.30(b).
5. For the cancellation of written instruments re Deed of Trust, Notice of Default and Notice of Trustee's Sale pursuant to
6. For attorney's fees pursuant to Civ.Code §1788.30(c).
7. For reasonable costs of suit pursuant to Code Civ.Proc. § 1032;
8. For any other relief as it may deem just and proper.

Dated this 19th day of August, 2024

*Okorie Okorocha*
———————————————
Okorie Okorocha, Esq.

Attorney for Plaintiff Linda C. Love